CHRISTENSEN JAMES & MARTIN, CHTD.
Evan L. James, Esq. (7760)
Laura J. Wolff, Esq. (6869)
7440 W. Sahara Ave.
Las Vegas, NV 89117
(702)255-1718
*Attorneys for Lillian Babcock*

CHRISTENSEN JAMES & MARTIN, CHTD.
7440 WEST SAHARA AVE., LAS VEGAS, NEVADA 89117
PH: (702) 255-1718 § FAX: (702) 255-0871

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| LILLIAN BABCOCK, an individual,<br>Plaintiff,<br>vs.<br>COLLEGE OF SOUTHERN NEVADA, ex rel., State of Nevada; and Ricardo Villalobos, an individual,<br>Defendants. | Case No.: 2:21-cv-00207<br><br>**COMPLAINT**<br><br>(Jury Trial Demanded) |

Plaintiff, by and through her attorneys Christensen James & Martin, Chtd., hereby complains as follows:

**JURY DEMAND**

1. Plaintiff demands trial by jury of the claims and issues set forth herein.

**JURISDICTION AND VENUE**

2. Federal jurisdiction is proper under Title VII of the Civil Rights Act of 1964, as Amended, ("Title VII"), 42 U.S.C. § 2000e-5(f).

3. Venue is proper in the United States District Court, District of Nevada as the Plaintiffs' employment records are maintained, relevant events occurred within, and / or events occurred as part of Plaintiffs' employment based in Clark County, Nevada.

4. Jurisdiction of Nevada State Claims is proper pursuant to 28 U.S.C. § 1367(a).

## PARTIES

5. At all relevant times, Plaintiff, Lillian Babcock ("Lillian") was a resident of Clark County, Nevada.

6. The College of Southern Nevada ("CSN") is a State of Nevada educational institution conducting business within Clark County, Nevada.

7. CSN employs more than 500 people.

8. At all relevant times, Ricardo Villalobos ("Ricardo") was employed by CSN.

9. At all relevant times, Lillian was employed by CSN.

10. Ricardo acted as Lillian's direct supervisor.

## ADMINISTRATIVE PROCESS

11. The prior paragraphs are incorporated herein.

12. Lillian contacted the Equal Employment Opportunity Commission ("EEOC") in mid 2020 seeking to file charges of discrimination and retaliation.

13. Lillian met with the EEOC at its earliest opportunity.

14. Lillian filed a Charge of Discrimination and Retaliation against CSN, also identifying her supervisor, Ricardo.

15. The EEOC issued a right to sue letter to Lillian on December 28, 2021.

## GENERAL ALLEGATIONS

16. The prior paragraphs are incorporated herein.

17. CSN hired Lillian in or about September 2013.

18. Lillian first worked at CSN as a part-time GED math instructor.

19. Lillian was then hired as a full-time Administrative Assistant I.

20. Lillian was then promoted to a Specialist within CSN's Community and Personal Enrichment Program.

21. Lillian was promoted to Interim Coordinator of the CSN Community Personal Enrichment Program during the maternity leave of the program's Coordinator.

22. Lillian was once again promoted to Interim Coordinator of the Community Personal Enrichment Program when her boss left that position.

23. Lillian is a young and beautiful woman.

24. In 2017, Ricardo was hired as the Executive Director for CSN's Division of Workforce and Economic Development ("DWED").

25. Ricardo is a middle-aged man.

26. Ricardo, upon his hire, became Lillian's direct supervisor in her role as Interim Coordinator of the Community Personal Enrichment Program.

27. Lillian graduated from the University of Nevada Las Vegas ("UNLV") in the summer of 2018 with Masters Degree in Public Administration.

28. Lillian was still serving in her Interim Coordinator position of the Community Personal Enrichment Program when she received her Masters Degree from UNLV.

29. Lillian received either commendable or excellent ratings on all of her yearly performance evaluations at CSN, including those for her time as Interim Coordinator.

30. Ricardo gave Lillian additional projects to complete in addition to her duties as Interim Coordinator.

31. In 2018, Ricardo began a process of grooming Lillian for sexual exploitation.

32. Ricardo recommended to Lillian that he and she meet for drinks to discuss her upcoming graduation from UNLV, her application to become the permanent Coordinator of CSN's Community Personal Enrichment Program, and her future with DWED.

33. Ricardo met with Lillian at Rebel Republic where he praised her work at CSN and predicted that she would continue to rise in her career.

34. Ricardo told Lillian that he wanted to help her grow professionally as a Latina.

35. Ricardo continued to have Lillian meet with him weekly over drinks to discuss work, which included discussing strategy, contracts, and other business.

36. On October 7, 2018, Lillian attended, as assigned by CSN, an Association of Continuing Higher Education conference in the state of Rhode Island.

37. Ricardo also attended the conference in Rhode Island.

38. On or about the evening of October 7, 2018, Ricardo insisted that Lillian visit his hotel room.

39. Ricardo told Lillian while they were in the room that he was romantically interested in her, that she was naturally beautiful, that she was a good person, that he found her attractive, and that she was "ambitious."

40. Many emotions and thoughts began to run through Lillian, including but not limited to feelings of losing her job, position or standing with Ricardo and CSN if she rebuffed Ricardo's advances.

41. While in the room, Ricardo suggested that he and Lillian kiss.

42. Lillian refused to kiss Ricardo.

43. Ricardo asked if he could rub her legs.

44. Lillian refused to let Ricardo rub her legs.

45. Lillian finally persuaded Ricardo that she needed to leave the hotel room.

46. That night and the next day Lillian was filled with emotions and concerns that rejecting Ricardo's advances would eventually result in her being treated differently, not being promoted, or even losing her job.

47. Lillian did not dare report the incident to CSN because she had witnessed CSN's treatment of other employees who complained and felt that she would be retaliated against.

48. Lillian believed that her best option was to ignore Ricardo's advances.

49. Ricardo apologized for his actions and told Lillian it would not happen again.

50. Ricardo did not keep his word and made many sexual advances toward Lillian while he continued to supervisor her.

51. Lillian continued to refuse his advances, remaining fearful that doing so or reporting him would cause harm to her.

52. On April 11, 2019, Ricardo asked Lillian what she thought about hiring a person named Janet to fill her Coordinator position once she was hired by CSN as Director of Operations.

53. At one meeting, Ricardo reached down and ran his hand up Lillian's leg, to which Lillian objected and demanded that he stop. Ricardo tried again, so Lillian slapped his hand and told him to stop. Ricardo touched her again, so Lillian pinched him and said she was serious.

54. On June 19, 2019, Ricardo touched Lillian's leg and asked her for "just one kiss," which Lillian refused.

55. On July 1, 2019, Lillian was given the position of Interim Operations Director at CSN.

56. Lillian's hiring as Operations Director was approved by CSN's President.

57. Lillian and Ricardo worked together to develop job descriptions for the new positions of Operations Director, Programs Director, Business Services Director, Finance Coordinator, and Marketing and Communications Coordinator.

58. Ricardo wanted each of the new positions filled by a Latino or Latina, which Lillian informed him that doing so was not proper because employment decisions would be made because of race or national origin.

59. CSN's President had the position of Programs Director filled by a previous work colleague, Belkiss Rodriguez ("Belkiss").

60. Belkiss promptly started to harass Lillian by making statements about CSN's President not having confidence in her ability to perform her job, making statements about Ricardo's favoring her, making statements about Lillian having too much power with DWED, asserting that Lillian was "no" person, that Lillian stood in her way to success.

61. Lillian approached Ricardo, who was also Belkiss' supervisor, and explained that Belkiss was engaging in hostile behavior with her and towards her with coworkers.

62. Ricardo dismissed Lilian's complaints regarding Belkiss' behavior and instructed Lillian to have empathy for Belkiss and do her best to cooperate with Belkiss.

63. Lillian continued to express her concern to Ricardo that Belkiss was engaging in humiliating and degrading behavior toward her, which included Belkiss hurling insults that include but are not limited to: "Who are you?" "You're not even in my league!"

64. Ricardo witnessed Belkiss' behavior.

65. Ricardo did nothing to address or correct Belkiss' behavior.

66. Belkiss' aggressive behavior toward Lillian did not stop as she spread rumors among coworkers and staff that that Lillian and Ricardo were having an affair.

67. On or about December 10, 2019 and January 17, 2020, Lillian could take the situation no longer and approached Human Resources.

68. Armen in Human Resources agreed that that Belkiss' behavior was wrong but rather than investigate the matter told Lillian to be more assertive and to read Verbal Judo, Situational Leadership, DISC, Ted Talks, What is Healthy Confrontation, and Dealing With Difficult People.

69. CSN's Human Resources took no action to investigate Belkiss' accusations regarding Lillian and Ricardo.

70. Armen and Lillian discussed Belkiss' assertions that CSN's President dislikes Lillian. Armen and Human Resources continued to refuse to investigate or take steps to curb the harassment.

71. The harassment continued to increase as Belkiss, in the presence of others, aggressively berated Lillian.

72. Lillian then physically feared Belkiss and reported her fear and concern to Ricardo as well as her concern about Human Resources' inaction.

73. Ricardo and Human Resources continued to ignore Lillian's pleas for help.

74. On or about January 17, 2020, Belkiss reported issues about Lillian to CSN's President with Ricardo present.

75. CSN still failed to perform an investigation despite the behavior toward Lillian being exhibited before CSN's highest officer.

76. Rather, Ricardo told Lillian to be professional, and acknowledged that Belkiss was causing problems throughout the department.

77. Belkiss' hostile behavior toward Lillian continued for months without intervention.

78. On May 23, 2020, Ricardo had Lillian join him for drinks at a relative's house. While there he told her that her position for Director of Operations would soon post for full time placement and that she would get the full-time position due to her efforts.

79. Ricardo then asked Lillian to "cuddle" him in a bedroom. Lillian refused and Ricardo asked why. Lillian explained that conduct is not proper as he was her boss. Lillian then left.

80. Ricardo then sent Lillian a text stating, "Come cuddle."

81. Ricardo sent Lillian a text message stating, "My bedroom is upstairs."

82. On June 6, 2020, Lillian and Ricardo attended a meeting at work. Lillian asked Ricardo if she was still likely to obtain the full-time position of Operations Director. Ricardo's attitude and demeanor toward Lillian change dramatically. He responded: "LB, it's not me you have to worry about, it's Belkiss you have to get her onboard, if she doesn't like you, Dr. Z won't like you."

83. Dr. Z is referring to CSN's President.

84. Ricardo then told Lillian that he would do nothing about Belkiss' hostile behavior.

85. Belkiss' aggressive and hostile behavior toward Lillian continued and Ricardo did nothing as Lillian's supervisor.

86. On or about July 1, 2020, Human Resources and Ricardo were informed that Belkiss had hurled a racial slur by calling an instructor she supervised a "white bitch" and, like with Lillian, threatened to submit an unfavorable report to CSN's President about the worker.

87. Belkiss also asserted that CSN's President would bring on cheaper instructors who are Latino.

88. Ricardo did nothing to protect Lillian.

89. CSN did nothing to protect Lillian.

90. On July 5, 2020, Lillian submitted a third complaint to Human Resources about the hostile work environment and that the situation was escalating and getting worse.

91. On July 6, 2020, Lillian informed Ricardo that the hostile work environment was not proper and that she was prepared to lodge a complaint against him for failure to address the matter.

92. Ricardo then informed Lillian that she would not be getting the full-time position of Operations Director despite his prior promises that she would obtain the job.

93. Ricardo also informed Lillian that she would be demoted to a coordinator position.

94. Lillian did not receive the Operations Director position and was demoted to a coordinator position.

95. CSN knew that Ricardo had engaged with sexual relations with other employees.

96. Ricardo engaged in grooming in an effort to obtain sexual favors from Lillian.

97. Ricardo acted willfully, maliciously, and with oppression, fraud or malice.

98. CSN acted willfully, maliciously, and with oppression, fraud or malice.

99. Lillian is entitled to an award of punitive and/or exemplary damages.

100. Punitive and/or exemplary damages are necessary for Defendants to reform behavior, take employee allegations of wrongful conduct seriously, enforce anti-harassment and discrimination policies, and weed out harassment and discrimination.

101. It has been necessary for Lillian to employ Christensen James & Martin as her attorneys to assist her, help enforce her rights, and obtain appropriate recovery for the Defendants' acts and legal violations.

**I**

**FIRST CLAIM**

**(Sexual Harassment Hostile Work Environment)**

**(Title VII, 42 U.S.C. §§ 2000e et seq. & NRS § 613.330)**

102. The prior paragraphs are incorporated herein.

103. Lillian was harassed at work because of her status as a female.

104. Ricardo's sexual interest in Lillian was sufficiently apparent for coworkers and CSN to recognize.

105. Lillian was subject to Ricardo's unwelcome sexual advances over a pervasive period and as a result of her employment with CSN.

106. Ricardo's conduct was offensive and severe.

107. Ricardo was more interested in protecting his own career than protecting Lillian's work environment.

108. Ricardo was more interested in grooming Lillian for sexual favors than protecting Lillian's work environment.

109. Lillian was subject to Belkiss' unwelcome conduct over a period of years.

110. Belkiss' conduct was severe and pervasive.

111. Belkiss' conduct toward Lillian was made known to CSN's President, Human Resources, and Lillian's supervisor, all who did nothing to have the matter addressed.

112. Ricardo's conduct was made know to CSN yet it took months before Ricardo was removed as Lillian's supervisor.

113. CSN allowed the improper and unwelcome conduct to continue despite express complaints.

114. Lillian's concerns about lack of action and retaliation by CSN's Human Resources department have proven true.

115. CSN is vicariously liable for Ricardo's conduct.

116. CSN is vicariously liable for Belkiss' conduct.

117. Lillian was left alone to deal with harassment by the hands of her boss and Belkiss.

118. Lillian suffered tangible employment actions resulting from the hostility, which includes but is not limited to, assignments / reassignment of projects to avoid Belkiss, refusal to promote, reassignment, demotion, and lower pay.

119. The sexual hostility and harassment altered the terms and conditions of Lillian's employment, which includes by illustration and not limitation making Lillian feel uncomfortable, intimidated and scared; CSN failing to enforce its anti-harassment policies, subjecting Lillian to ridicule so as to lose promotions and employment prospects, subjecting Lillian to quid pro quo to gain promotion and employment position; and subjecting Lillian to employ unnecessary efforts to maintain her employment standing.

**II**

**SECOND CLAIM**

**(Sexual Harassment Quid Quo Pro)**

**(Title VII, 42 U.S.C. §§ 2000e et seq. & NRS § 613.330)**

120. The prior paragraphs are incorporated herein.

121. Ricardo linked his sexual advances to Lillian's employment.

122. Ricardo linked his sexual advances to Lillian obtaining the Director of Operations position.

123. The Director of Operations position had already been approved and budgeted by July 1, 2020.

124. Lillian suffered a tangible employment action when she was removed from consideration for the Director of Operations position.

125. Lilian suffered a tangible employment action when she was demoted to a coordinator.

126. Lillian suffered a tangible employment action when her pay was reduced.

**III**

**THIRD CLAIM**

**(Retaliation)**

**(Title VII, 42 U.S.C. §§ 2000e-3(a) & NRS § 613.340)**

127. The prior paragraphs are incorporated herein.

128. Lillian opposed Belkiss' actions.

129. Ricardo instructed Lillian not to participate in the complaint issues against Belkiss, e.g. Belkiss calling another employee a "white bitch."

130. Ricardo and CSN retaliated against Lillian for her filed complaints, which include but are not limited to complaints against Belkiss' behavior toward Lillian and other workers.

131. Ricardo and CSN retaliated against Lillian because she complained about Ricardo's actions and inaction.

132. CSN retaliated against Lillian because she filed a complaint against Ricardo.

133. There is a temporal proximity between Lillian's rejection of Ricardo, complaint to Ricardo about Belkiss' behavior (including the "which bitch" remark and disparaging comments about Latino pay) and the adverse actions alleged herein.

134. The conduct and retaliation are in violation of 42 U.S.C. §§ 2000e-3(a) and NRS § 613.340.

**IV**

**FOURTH CLAIM**

**(Negligence)**

135. The prior paragraphs are incorporated herein.

136. CSN knew or should have known of the harassment of Lillian by both Belkiss and Ricardo.

137. CSN's disregard of Lillian's complaints confirmed and reinforced her distrust of CSN's Human Resources Department.

138. CSN allowed Belkiss' relationship with CSN's President to drive investigatory decisions rather than following CSN policy.

139. CSN failed to conduct a timely investigation of Lillian's complaints.

140. An investigation of the complaints lodged by Lillian would have uncovered and / or verified the work place hostility.

141. An investigation of the complaints lodged by Lillian would have uncovered Ricardo's harassment of Lillian.

142. CSN had a duty, both legally and by adopted policy, to investigate the harassment.

143. CSN had a duty, both legally and by adopted policy, to prevent the harassment.

144. CSN and its agents breached the duties owed to Lillian by not investigating the alleged harassment.

145. CSN and its agents breached the duties owed to Lillian by not preventing the alleged harassment.

146. CSN and its agents breached the duties owed to Lillian by not remedying the alleged harassment.

147. CSN and its agents breached the duties owed to Lillian by allowing conditions to continue that created hostility, retaliation, and / or discrimination.

148. Lillian has been damaged financially and professionally by the breaches of duty.

149. CSN and its agents are the direct and / or proximate cause of Lillian's damages.

**V**

**FIFTH CLAIM**

**(Intentional Infliction of Emotional Distress)**

150. The prior paragraphs are incorporated herein.

151. Both CSN's Human Resources department and Ricardo intentionally refused to investigate and / or stop Belkiss' behavior because of fear that Belkiss' relationship with CSN's President would harm their standing and / or position with the President and the College.

152. CSN and Ricardo intended Lillian to suffer harassment

153. CSN and Ricard intended Lillian to suffer a hostile work environment.

154. Allowing Belkiss to spread vicious sexual lies about, make horrible derogatory comments concerning, impugn work performance of, and belittle Lillian is extreme and outrageous conduct.

155. The refusal to investigate and / or stop harassment is extreme and outrageous conduct that is also a reckless disregard of anti-harassment laws, school policies against harassment, and Lillian's rights.

156. Lillian suffered severe and extreme emotional distress that kept her up at night, made her physically ill, and caused unnecessary tension in her professional and personal relationships.

157. The alleged conduct is the direct and proximate cause of Lillian's harm.

158. Lillian suffers and will continue to suffer because of the conduct.

Wherefore, Plaintiff prays for trial by jury and an award of the following:

1. For judgment of general damages in favor of Plaintiff and against each defendant in an amount proven at trial,

2. For judgment of special damages in favor of Plaintiff and against each defendant in an amount proven at trial,

3. For punitive damages and exemplary damages,

4. For costs of suit,

5. For reasonable attorneys' fees,

6. For such other relief as deemed just and proper.

DATED February 8, 2021. CHRISTENSEN JAMES & MARTIN, CHTD.

By: */s/ Evan L. James*

Evan L. James, Esq. (7760)
7440 W. Sahara Avenue
Las Vegas, Nevada 89117
Tel: (702) 255-1718
Email: elj@cjmlv.com
*Attorneys for Plaintiffs*